**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD A. KEEN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 05-CV-4478 |
| | : | |
| LOCKHEED MARTIN CORP. et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

| | | |
|---|---|---|
| JOHN PIATELLI, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | NO. 05-CV-6211 |
| | : | |
| LOCKHEED MARTIN CORP. et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**April  30 , 2007**                                                    **Anita B. Brody, J.**

## MEMORANDUM

Before me are summary judgment motions in two cases relating to the allegedly unlawful denial of benefits to workers who performed services for General Electric Company and/or Lockheed Martin Corporation at aerospace facilities in King of Prussia, Pennsylvania.  In 1993, Martin Marietta Corporation purchased GE's aerospace facilities, and in 1995, Martin Marietta merged with Lockheed Corporation and became known as Lockheed Martin ("Lockheed"). Defendants in both cases have moved for summary judgment on the statute of limitations.

**Facts**

The material facts are undisputed.

      1.     John Piatelli

John Piatelli worked at the King of Prussia facilities from 1991 to 2002.[1]  In 1991, GE hired Piatelli as a courier in the human resources department.  Piatelli underwent a security clearance and background check, which lasted six to nine months.  During that time, Piatelli was a regular employee of GE, eligible to participate in GE's benefit plans.  Piatelli discussed GE's benefits with a GE human resources representative.  The representative told Piatelli that Piatelli's status as a regular employee would be short-lived, for upon completion of the security clearance and background check, Piatelli would become a subcontractor no longer eligible for any GE benefits.  In light of his fleeting eligibility, Piatelli never substantively reviewed any plan documents and never enrolled in any of GE's benefit programs.

After receiving security clearance, Piatelli was terminated by GE, hired by Volt, a temporary employment agency, and assigned to work in the GE mailroom.  As the GE representative had advised him, once he became a contingent worker, Piatelli did not receive any GE benefits.   Piatelli believed, however, that contingent workers should be receiving benefits for their service.  This thought occurred to him "off and on" for many years.  He asked his supervisor, plaintiff Stephen Gardner, also a contingent worker, why they were not receiving

---

[1]Defendants cite Piatelli's own deposition transcript in support of the assertion that GE hired Piatelli in October, 1990, and notified him at that time that he would be eligible for benefits only during the brief period pending his security clearance and background check.  Deft.'s Ex. A, 102.  Piatelli cites his affidavit dated April 8, 2004, to establish that he began working for GE in 1991.  Pl.'s Ex. B (Piatelli affidavit).  The difference is not material.

benefits, and Gardner told him it was because of their contingent worker status.[2]

In 1992, Piatelli stopped working for Volt and began working for Aerotech, still at the GE mailroom.  Later that year, GE outsourced its mailroom operations to CDI.  In April, 1993, Martin Marietta, which later became Lockheed, acquired parts of the GE business and took over the King of Prussia facilities.  Martin Marietta adopted GE's existing benefit plan language that provided benefits only to "employees."

In 1995, Piatelli applied for a job as a regular employee at Lockheed, in part to obtain benefits.  Lockheed offered him a custodial position, and he accepted.  Lockheed began paying Piatelli directly, and Piatelli began receiving benefits under Lockheed's plans.  Lockheed, however, did not credit Piatelli for his years of service as a contingent worker.  In 2002, Lockheed terminated Piatelli's employment for reasons not material to this action.

2.      Stephen Gardner

Plaintiff Stephen Gardner worked as a mail clerk in the King of Prussia facilities from 1985 to 1997 or 1998.  For this entire period, Gardner was a contingent worker paid by third party employment agencies, initially by Manpower, and then by CDI.  Gardner never read or received any of defendants' benefit plan documents.  No one from GE or Lockheed ever spoke to Gardner directly about benefits, but Gardner was aware that while regular employees were receiving benefits, as a contingent worker, he was ineligible.  Gardner knew several regular GE

_____

[2]Gardner does not recall talking to other contingent workers about their lack of benefits, but Piatelli testified in his deposition that he had spoken to Gardner and others about this issue.  *Compare* Pl.'s Ex. B, 98 (Gardner dep.), *with* Pl.'s Ex. A, 53 (Piatelli dep.).  The discrepancy is not material so long as these facts are offered to show the effect on Piatelli as a listener and Piatelli's (and not Gardner's) knowledge that defendants deprived contingent workers of benefits.

employees who worked in the mailroom and assumed they were receiving benefits, including GE employees who used to be contingent workers.  Gardner desired benefits and was concerned about not receiving them, but Gardner did not speak to anyone at Manpower, anyone at GE, or any colleagues about those concerns because he was content with his job and wanted to avoid conflict.  In 1992, GE outsourced its mailroom to CDI.  Around that time, Gardner stopped working for Manpower and began working for CDI.  Gardner became a mailroom supervisor and continued in that role through Martin Marietta's purchase of the King of Prussia facilities, as well as its merger with Lockheed.  In 1997 or 1998, Gardner resigned from CDI and ceased working at the King of Prussia facilities.

Before 1994, defendants' benefit plans provided for the participation of common law employees.[3]  Piatelli and Gardner allege that each became a common law employee from approximately the time they began working at defendants' facilities and remained a common law employee until the time they left or accepted regular employment.[4]  Defendants admit that they administered their plans to exclude contingent workers completely, regardless of whether these workers had acquired the status of common law employees.  Defendants took no action to determine any contingent workers' common law employee status and accompanying right to

---

[3]Common law employee status is determined by a multi-factor test that considers, in part, the skill required to do the job, the source of tools and instrumentalities, the location of the work, duration of the relationship between the parties, the method of payment, and extent of the hired party's discretion.  <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 323-24 (1992).

[4]Piatelli alleges that he was a common law employee of GE from approximately 1991 to 1993, and a common law employee of Martin Marietta from approximately 1993 to 1995. Compl., ¶ 6. Gardner was a common law employee of GE from approximately 1985 to 1993; a common law employee of Martin Marietta from approximately 1993 to 1995; and a common law employee of Lockheed from approximately 1995 to 1997.  Compl., ¶ 9.

participate in defendants' benefit plans.  In 1994 and 1995, Lockheed amended its plans to preclude common law employees from participating altogether.  Lockheed made no effort to inform any contingent workers of these plan amendments.

In November 2003 and May 2004, Piatelli and Gardner filed administrative claims seeking benefits for their service as common law employees for the period of time that they were contingent workers.  Defendants denied their claims and their appeals of those claims.

On November 30, 2005, Piatelli and Gardner filed this lawsuit against GE, Lockheed and related benefit plans and plan administrators.  They bring claims for: (1) declaratory relief regarding their participant status as common law employees, under ERISA § 502(a)(1)(B), 29 U.S.C § 1132(a)(1)(B); (2) breach of fiduciary duty under ERISA § 404(a) and § 502(a)(3), 29 U.S.C § 1104(a) and § 1132(a)(3); and (3) declaratory and injunctive relief regarding Lockheed's alleged violation of ERISA's notice provision under ERISA § 204(h), 29 U.S.C § 1054(h).

       3.    Richard Keen

For many years, plaintiff Richard Keen worked for GE as a systems engineer and regular employee at the King of Prussia facilities.  In 1993, Martin Marietta acquired those facilities. Martin Marietta created an eight week window period during which former GE employees, who were now employees of Martin Marietta, could elect to retire from Martin Marietta and continue their jobs working as contingent workers without receiving benefits from Martin Marietta. During this window period, from April 5, 1993 to May 28, 1993 (Period 1), Martin Marietta employed Keen directly.  Keen was a "regular employee" entitled to participate in Martin Marietta's benefit plans.   At the close of the window period Keen elected to retire from Martin Marietta, begin collecting his GE pension, and continue working at the aerospace facilities as a

contingent worker employed by H.L. Yoh Company.  Martin Marietta management assured Keen that, as a contingent worker, he would earn the same salary he had earned as a regular employee, but that he would be ineligible to participate in Martin Marietta's benefit plans.  Keen worked in this capacity from May 28, 1993 to February 10, 1997 (Period 2), during which time Martin Marietta merged with Lockheed Corporation.  Keen alleges that he was a common law employee of Lockheed from May 28, 1993 to February 10, 1997.

On February 10, 1997, Lockheed offered Keen the opportunity to join the company once again as a "regular" employee, and Keen accepted.  From February 10, 1997 to September 3, 2002 (Period 3), Keen worked for Lockheed in this capacity and participated in Lockheed's benefit plans.  Lockheed offered an informal vacation plan, under which Lockheed employees were entitled to either two or three weeks of paid vacation per year, depending on their years of service credited under the pension plan.

Keen retired in 2002.  Lockheed calculated Keen's pension and other benefits based on his service from February 10, 1997 to September 3, 2002, excluding his service as a contingent worker employed by Yoh.  In September, 2003, Keen wrote to Lockheed to recover benefits he believed were owed to him on account of his service during that period.  Keen received no response.  In November, 2003, he wrote to Lockheed's Vice President for Benefits Administration and to Benefits Finance and Administration.  Lockheed denied Keen's requests and his subsequent appeals.  In March, 2004, Lockheed denied Keen's request to reconsider his appeal.

On August 23, 2005, Keen filed this lawsuit, asserting six claims against various Lockheed-related defendants: three claims for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. §

1132(a)(1)(B), one claim for denial of vacation benefits,[5] and two claims under ERISA § 510, 29

U.S.C. § 1140, for discrimination against a participant or beneficiary for exercising any right to

which he is entitled under the provisions of the employee beneficiary plan.

Keen contends that he is entitled to additional pension benefits for both periods 1 and 2,

but with respect to his claims for savings and cafeteria benefits,[6] Keen asserts that he is entitled

to additional benefits only for period 2.

The Lockheed defendants have moved for summary judgment against Keen on the statute

of limitations.

### Jurisdiction and Standard

Jurisdiction is under 28 U.S.C. § 1331.  Summary judgment should be granted under

Federal Rule of Civil Procedure 56(c) "if, after drawing all reasonable inferences from the

underlying facts in the light most favorable to the non-moving party, the court concludes that

there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to

judgment as a matter of law."  Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).

### Analysis

A.      Piatelli and Gardner

1.      Declaratory judgment regarding right of common law employees to
participate in defendants' plans

Piatelli and Gardner's first claim seeks a declaratory judgment finding that defendants'

---

[5]Keen does not specify the legal basis for this claim, but it appears it arises under state law because ERISA does not cover most vacation plans.  See Massachusetts v. Morash, 490 U.S. 107, 116 (1989).  Assuming Keen's vacation benefits claim arises under state contract law, this Court has jurisdiction under 28 U.S.C. § 1367.

[6]"Cafeteria" benefits include life, medical, dental and vision benefits.  Am. Compl., ¶ 16.

plans provided for common law employees to participate in the plans.  ERISA § 502(a)(1)(B), 29

U.S.C. § 1132(a)(1)(B) provides:

> A civil action may be brought –
> (1) by a participant or beneficiary –
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or *to clarify his rights to future benefits under the terms of the plan* . . . .

29 U.S.C. § 1132(a)(1)(B) (emphasis added).

Because ERISA contains no express statute of limitations for claims under this provision,

federal courts borrow the statute of limitations for the most analogous claim under state law.

Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992).  A claim under § 502(a)(1)(B) is

most analogous to a breach of contract claim.[7]  Meade v. Pension Appeals & Rev. Comm., 966

F.2d 190, 195 (6th Cir. 1992).  Under Pennsylvania law, the statute of limitations for breach of

contract is four years.  42 Pa. Cons. Stat. § 5525(a)(8).  Plaintiffs filed suit on November 30,

2005.  Therefore, plaintiffs' first claim is timely if it accrued on or after November 30, 2001.

Although state law determines the statute of limitations, when the claim accrues is

decided under the federal discovery rule.  Romero v. Allstate Corp., 404 F.3d 212, 221 (3d Cir.

2005).  Under the discovery rule, a claim accrues when a plaintiff discovers, or with due

diligence should have discovered, the injury that forms the basis for that claim.  Romero, 404

F.3d at 222.  The Third Circuit teaches that a plaintiff discovers or should have discovered the

injury underlying a non-fiduciary claim when "there has been a repudiation [of the benefits] by

---

[7]The same statute of limitations applies to all actions under § 502(a)(1)(B) – actions to recover benefits due, to enforce rights, or for a declaratory judgment to clarify rights to future benefits.  Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 48 (2d Cir. 1999).

the fiduciary which is clear and made known to the beneficiary." Id. at 223. Romero's "clear repudiation" rule does not require a formal claim or denial of a claim to trigger the statute of limitations. Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 521 (3d Cir. 2007). It requires only two elements: (1) a repudiation; and (2) that is clear and made known to the beneficiary. Id.

Romero arose from a class action brought by insurance agents who had been employed by Allstate Insurance Corp. Allstate amended its Pension Plan in the early 1990s to deny pension credits to independent contractors. Romero, 404 F.3d at 216. While this was happening, Allstate engaged in an aggressive campaign to convert all of its agents to independent contractors. Id. In the late 1990s, Allstate finally forced its remaining agents either to become independent contractors and to sign releases of all claims against Allstate, or to retire. Id. at 217. Plaintiffs contended that it was only then that they could have known that the plan amendments would affect them detrimentally, because they could not have predicted any earlier that their status would change to bring them within the ambit of the plan amendments. Id.

Plaintiffs sought to represent a class on claims that these plan amendments had the effect of eliminating or reducing an early retirement benefit, and that Allstate failed to provide the class with notice of the amendments. Id. at 218-219. On a motion to dismiss, the district court dismissed the claims as untimely. Id. at 219. The Third Circuit reversed. The Court found that a rigid rule tying the date of accrual to the date of the plan amendments "would have the undesirable effect of requiring plan participants and beneficiaries 'likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential [p]lan errors and abuses.'" Id. at 224 (citation omitted). The Court could not determine from the face of the complaint if or when defendants had notified plaintiffs

of the plan amendments, and if or when plaintiffs knew or should have known that they someday would be forced to become independent contractors.  Id.  Therefore, plaintiffs' suit could not be dismissed as time-barred on the face of the complaint.

The Third Circuit has applied the clear repudiation rule to claims for the denial of benefits.  Miller, 475 F.3d at 520-521.  Plaintiff Miller became disabled after heart surgery and collected long-term disability benefits from his employer.  Prior to his surgery, he had worked as a casino floor worker, and more immediately, as an outside marketing salesman, which paid more than the job as a casino floor worker.  Id. at 518.  From the very first payment, his long-term disability benefits were erroneously based on his salary as a casino floor worker, not his salary as a salesman.  Id.  Miller did not realize the error in his monthly benefits until fifteen years later.  Id.  The Court found that Miller's benefits had been clearly repudiated from his receipt of the very first erroneously-calculated check.  Id. at 521-522.  The Court acknowledged that it "strains" the word "repudiation" to apply it to a benefits award rather than a denial, and that a "denial of benefits is more likely to incite a beneficiary to action than an award."  Id. at 521 n.3, 523.  However, Miller had not challenged the notice of his rights and entitlements under the plan, and so the denial of benefits implicit in an underpayment sufficed to notify him of his injury.  Id. at 522-523.  Therefore, his claim accrued from his receipt of the first check.  Id. at 522.

The clear repudiation rule strikes a balance between ERISA's beneficiary-protective goals and the need for repose, and therefore a rapid resolution of disputes once an actionable injury occurs.  Miller, 475 F.3d at 522.  Consistent with these policies, the clear repudiation rule preserves the core of the traditional discovery rule, namely, that it is a plaintiff's knowledge or

10

ability to know of his or her injury that triggers the statute of limitations, not the plaintiff's knowledge that the injury violates his or her legal rights.  Romero, 404 F.3d at 215 ("We . . . make explicit that the federal discovery rule should be used to determine the date of accrual of the non-fiduciary claims alleged here.")  See also Podobnik v. United States Postal Service, 409 F.3d 584, 590-591 (3d Cir. 2005) (elderly letter carrier was aware of actual injury and its source, and thus his age discrimination claim accrued, when defendant reduced carrier's mail route and forced him to retire, even though carrier had not yet discovered that defendant's conduct was motivated by age-based animus); Wastnak v. Lehigh Valley Health Network, 342 F.3d 281, 287 (3d Cir. 2003) (injury and its cause were discernible and age discrimination claim accrued upon plaintiff's termination, not upon employer's replacement of plaintiff with younger worker, which triggered suspicion of discrimination).

In accordance with these precedents, Third Circuit law supports the conclusion that plaintiffs' lack of knowledge of their legal entitlement to benefits does not alter or defer their knowledge of their injury.  Specifically, Miller does not require plaintiffs to receive notice of plan terms before a clear repudiation can occur.  Instead, Miller noted that a beneficiary's prior notice of his rights under a plan mitigated the possibility that a benefits *award* might lull the beneficiary into inaction.  475 F.3d at 523.

> Indeed, we require beneficiaries to safeguard [their] rights upon a denial of benefits, and this case provides no compelling reason to require less diligence after an award. . . . .  Without any indication of deficient notice, a beneficiary's receipt of an award is sufficient to inform him that the plan has determined his entitlement.

Id.  Unlike a benefit award, however, a denial is an unmistakable repudiation, and plaintiffs do

not need notice of plan terms to understand that a denial constitutes an injury.[8]

In this case, the parties do not dispute that Piatelli and Gardner were aware that defendants were not providing them benefits because of their status as contingent workers. The record indicates that GE told Piatelli that he would not receive benefits from GE, other than during the brief security clearance period, and that the lack of benefits was because he was a subcontractor. Piatelli believed he should have received benefits, and the thought occurred to him "off and on" for many years to look into his eligibility. The denial of benefits obligated Piatelli to investigate his injury. Similarly, although apparently no one from GE or Lockheed formally discussed benefits with Gardner, Gardner understood from the start of his tenure at defendants' facilities that he would not be eligible to participate in defendants' benefit plans as a contingent worker. He assumed that regular employees received benefits, but knew that contingent workers like himself did not. The lack of benefits concerned Gardner, but he did not

---

[8]I recognize that at least one other trial court in this District has reached a different conclusion in a similar case decided prior to Romero and Miller, which also applied the "clear repudiation" rule for accrual of non-fiduciary ERISA claims by contingent workers. Thomas v. SmithKline Beecham Corp., 297 F. Supp. 2d 773 (E.D. Pa. 2003). The Thomas Court found that plaintiffs' claim for denial of benefits did not accrue until plaintiffs had access to plan documents and "knew or should have known that they were (arguably) entitled to benefits" as common law employees. Id. at 786. Without knowledge of their legal entitlement to benefits, the Court found, plaintiffs could not know they were legally injured or that their rights had been violated. Id. However, this formulation diverges from the discovery rule's focus on actual injury as opposed to legal injury.

Other district courts addressing similar claims by contingent workers have found that the statute of limitations begins to run when the workers become aware that they are being treated as contingent workers and are therefore ineligible for benefits, not when the workers gain access to benefit plan language. See, e.g., Muller v. Am. Mgmt. Ass'n Int'l, 368 F. Supp. 2d 1166, 1172 (D. Kan. 2004) (clear repudiation occurred and statute of limitations began to run on claim for benefits under ERISA when plaintiff independent contractors signed agreements stating they were ineligible for benefits, not when they gained access to plan language).

ask any questions for fear of creating tension in the workplace.  Although understandable, Gardner's desire for workplace harmony did not suspend his obligation to investigate his concerns, to request plan documents, or to ask questions about eligibility criteria.  Neither Piatelli nor Gardner ever pursued their suspicions that there might be a way for them to secure benefits.

A "clear repudiation" requires no more than a repudiation of benefits by the fiduciary, communicated to the beneficiary.  Miller, 475 F.3d at 520-521.  This standard is met here, where defendants denied plaintiffs benefits because they were contingent workers, and plaintiffs understood this.  Gardner and Piatelli claim they were entitled to benefits as common law employees from the moment they started working at the King of Prussia facilities.  Requiring plaintiffs to investigate the core facts relating to a denial of benefits and bring their claims within four years does not impose on them a "duty of clairvoyance."  Romero, 404 F.3d at 224. Plaintiffs need not predict the future, but they must investigate the present.  Their claim is now time-barred.[9]

---

[9]Another lens for examining the occurrence of actionable harm is the doctrine of ripeness for declaratory judgments.  In Travelers Ins. Co. v. Obusek, the Third Circuit identified three factors to determine ripeness for declaratory judgments: (1) adversity of interests; (2) conclusiveness; and (3) utility.  72 F.3d 1148, 1154-1155 (3d Cir. 1995).  The Court recognized that a declaratory judgment action by its very nature presents a case where no "'accomplished' injury has been suffered," but that it must still comport with the Constitution's requirement of an actual "case or controversy."  Id. at 1154, U.S. CONST., art. III.

All three factors suggest that plaintiffs' claim for clarification of their rights would have been ripe had they brought their claims shortly after beginning their work at the King of Prussia facilities.  First, plaintiffs and defendants had adverse interests: plaintiffs sought benefits to which they were allegedly entitled as common law employees, and defendants sought to deny those benefits to plaintiffs.  Second, a declaratory judgment would have been conclusive.  "That is, the legal status of the parties [would] be changed or clarified by the declaration."  Travelers Ins., 72 F.3d at 1155.  For a declaratory judgment to be conclusive, the court must have the facts necessary to make a finding.  Id.  Here, a declaratory judgment would have required the court to decide a question of law: whether defendants' plans cover plaintiffs, who are common law employees.  No additional facts would need to be presented, and the court would need only

2.      Notice of elimination of benefits

Piatelli and Gardner also assert a claim for Lockheed's failure to provide notice of the

elimination of benefits to contingent workers who were common law employees.  Lockheed

allegedly eliminated benefits for common law employees through plan amendments in 1994 and

1995.  ERISA § 204(h), 29 U.S.C. § 1054(h) provides:

> "An applicable pension plan may not be amended so as to provide for a significant
> reduction in the rate of future benefit accrual unless the plan administrator
> provides the notice described in paragraph (2) to each applicable individual . . . ."

29 U.S.C. § 1054(h).  "Applicable individual" includes "each participant in the plan."   29 U.S.C.

§ 1054(h)(8)(A)(i).  "Participant" is defined as:

> [A]ny employee or former employee of an employer . . . who is or may become
> eligible to receive a benefit of any type from an employee benefit plan which
> covers employees of such employer . . . .

29 U.S.C. § 1002(7).

Piatelli and Gardner seek a declaration that Lockheed violated § 1054(h), a declaration

that the amendments are null and void, an injunction to prevent Lockheed from using the

amended language to determine eligibility for benefits, and an award of benefits accrued under

the plans.  Because their claim for benefits is time-barred, however, plaintiffs cannot obtain the

relief they seek even if they were to prevail on their claim under § 1054(h).  A declaratory

----

engage in contract interpretation.  Under these circumstances, a declaratory judgment would have
established or negated plaintiffs' legal entitlement to benefits under defendants' plans.  This
would have satisfied the conclusiveness prong.  Third, the declaratory judgment would have had
utility.  It would have been of "some practical help to the parties," in that it would have aided the
parties in planning for the future.  Id. at 1155.  A declaratory judgment seeking clarification of
plaintiffs' rights would have been ripe if brought years ago.  This analysis supports the
conclusion that actionable harm occurred when Piatelli and Gardner began working at the King
of Prussia facilities as common law employees who were not receiving benefits.  Defendants'
repudiation of plaintiffs' right to benefits triggered plaintiffs' obligation to investigate.

judgment as to the alleged § 1054(h) violation and the invalidity of the plan amendments would have no effect; an injunction barring Lockheed from utilizing the amended language would have no effect; and a finding of liability under § 1054(h) would not justify awarding benefits to which plaintiffs are not entitled.  Accordingly, this claim is dismissed as moot.  DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) ("'[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'") (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).

   3.  Breach of fiduciary duty

   Piatelli and Gardner also assert a claim for breach of fiduciary duty, contending that defendants misclassified them as non-employees and systematically failed to evaluate their eligibility to participate in defendants' benefit plans as common law employees, to enroll them in the plans, and to ensure that plaintiffs were provided with benefits under the plans.  Compl., ¶ 42. Plaintiffs further allege that defendants misrepresented to plaintiffs that they were not entitled to participate in or receive benefits in the plans, and that this conduct constituted "fraud or concealment."  Id.[10]  ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides, in part:

> (1) . . .[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . .
>
>  (A) for the exclusive purpose of:
>
>   (i) providing benefits to participants and their beneficiaries . . . .

29 U.S.C. § 1104(a)(1).

---

[10]To prevail on a claim for breach of fiduciary duty arising out of a misrepresentation, plaintiffs would have to prove: (1) defendant's status as ERISA fiduciary; (2) misrepresentation by defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on that misrepresentation.  Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197, 202-203 (3d Cir. 2006).

ERISA contains an express statute of limitations for a fiduciary duty claim.  ERISA, §

413, 29 U.S.C. § 1113, provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of -
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  "'This section thus creates a general six year statute of limitations, shortened

to three years in cases where the plaintiff has actual knowledge of the breach, and potentially

extended to six years from the date of discovery in cases involving fraud or concealment.'"

Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197, 201 (3d Cir. 2006) (quoting Kurz v. Phila. Elec.

Co., 96 F.3d 1544, 1551 (3d Cir. 1996)).

a.      Date of Last Action

The leading Third Circuit case on the accrual of a fiduciary claim is Ranke.  That case

was brought by retirees of Eastman Kodak and current employees of Sanofi-Synthelabo, Inc.

Ranke, 436 F.3d at 198.  In 1988, Kodak's pharmaceutical division merged with a company

called Sterling Winthrop, Inc.  Kodak and Sterling told Kodak's employees that they would

receive pensions from both Kodak and Sterling if they accepted a transfer of employment to

Sterling.  Id.  The Kodak employees transferred.  Id.

In 1994, Sanofi, purchased certain of Sterling's assets.  Id.  Sanofi invited Sterling

employees, previously employed by Kodak, to join the company.  Id.  At that time, the Sterling

16

employees were told that Sanofi would credit their years of service at Kodak under the Sanofi pension plan.  Id. at 198-199.

In 2002, the plaintiffs received statements of their estimated retirement benefits and found that Kodak had credited only their total years of service with that company and had based the employees' entitlement only on their wages at Sterling in 1994, not their final salaries at Sanofi. Id. at 199.  The employees also learned that the Sanofi pension would be based only on the employees' years of service at Sanofi, excluding their years of service at Kodak and/or Sterling. Id.  The employees realized then that Kodak and Sanofi would not honor the promises they had made years before.  Id.

Plaintiffs filed suit in 2004, contending that the 1988 and 1994 communications were misrepresentations.  Id.  Defendants moved to dismiss on the basis of the six year statute of limitations.  Id.  Plaintiffs contended that their suit was timely because they continued to detrimentally rely on earlier misrepresentations by making various "life choices" during the statutory period.  Id. at 200.

The district court found the suit time-barred under § 1113(1)(A), and the Third Circuit affirmed.[11]  Id.  In analyzing timeliness, the Third Circuit found that "the date of the last action which constituted part of the breach" was the date of defendants' last purported misrepresentation, which occurred in 1994.  Id. at 201, 203.  "Continuations" of the initial breach did not defer the accrual of plaintiffs' claims.  Id. at 203.  As a result, the claim had accrued more than six years before the plaintiffs filed suit, and their suit was time-barred.  Id.

---

[11]Neither party contended that the omissions standard in § 1113(1)(B) applied.  Id. at 202 n.2.

17

Similarly, under Third Circuit law, an employer defendant who failed to correct its employees' mistaken belief had breached its fiduciary duty through an "act," not an ongoing omission.  In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig. (Unisys III), 242 F.3d 497, 505 (3d Cir. 2001).  In Unisys III, defendant offered "lifetime" health care benefits to retirees and disabled workers.  Id. at 499.  Plaintiffs understood these lifetime benefits to be "guaranteed." Id. at 500.  Defendant, however, had reserved the right to terminate benefits, as printed in the summary plan descriptions distributed to employees.  Id.  Defendant's representatives counseled plaintiffs without referring to the reservation of rights clause, despite knowing that the employees mistakenly believed their benefits were guaranteed.  Id. at 501.  Defendant then announced that it would terminate the existing medical benefit plans and replace them with less generous ones.  Id. at 499.  Upon learning about the plan changes, plaintiffs filed suit.  Plaintiffs contended that the statute of limitations began to run upon the announcement of the termination of benefits.  Id. at 502.  The Third Circuit applied the six year statute of limitations for "acts."  Id.  The Court ruled that the limitations period began no later than the date on which plaintiffs retired, for this was the last date on which defendants could have made misrepresentations that induced plaintiffs to retire.  Id. at 506.  In her partial concurrence and partial dissent, Judge Mansmann argued that the alleged breach constituted an ongoing omission because defendants had failed to disabuse plaintiffs of their erroneous view that their benefits were guaranteed.  Id. at 512.

Ranke and Unisys III create a hostile environment for plaintiffs seeking to assert claims against defendants who breach their duties and then seal their lips.  But these precedents govern this case.  Piatelli and Gardner contend that defendants misclassified them as non-employees and failed to evaluate their eligibility for benefits as common law employees.  Compl., ¶ 42.  Shifting

18

their position in their opposition brief, plaintiffs contend that they do not dispute their classification as contingent workers, only defendants' failure to individually assess their eligibility as common law employees, and to inform plaintiffs of this possible eligibility.  They contend that, on account of defendants' continuing omissions, the statute of limitations "has not begun to run."  Pl.'s Opp., at 10.

This argument obfuscates the real issue: that defendants made a categorical decision to deny benefits to contingent workers who were common law employees, even though this decision purportedly violated the very terms of defendants' benefit plans.  Lockheed Deft.'s Reply, 10.  In other words, defendants' "failure" to assess is tantamount to defendants' decision not to provide benefits to any contingent workers, a decision that was communicated orally to Piatelli and that was understood by Gardner.  As in Ranke and Unisys III, defendants allegedly induced plaintiffs to adopt an erroneous belief and never disabused them of it.  Under these precedents, defendants' initial act followed by failure to inform plaintiffs that they have misunderstood their entitlements does not transform that initial act into an ongoing omission. Similarly, defendants' repetition of an earlier misrepresentation does not defer accrual of plaintiffs' claim.  Ranke, 436 F.3d at 203.  Just as the six year statute of limitations for "acts" under § 1113(1)(A) applied in Ranke and Unisys III, it applies to this case.  GE's last act constituting part of the breach of fiduciary duty occurred in 1985 with respect to Gardner, and in 1991 with respect to Piatelli; Lockheed's last act constituting part of the breach occurred in 1993 when Martin Marietta adopted GE's benefit plan language that provided benefits only to "employees."  Defendants took the position that contingent workers were ineligible for benefits, and plaintiffs relied on these representations.  Because more than six years elapsed from the date

19

of the last action constituting the breach to the time plaintiffs filed suit, their claim is time-barred.

> b.    Fraud or Concealment

The fraud or concealment exception similarly does not apply to toll the statute of limitations.  Ranke requires a plaintiff to establish that the defendant took affirmative steps to conceal its breach apart from the initial misrepresentation.  436 F.3d at 204-205.  Plaintiffs in Ranke invoked the fraud or concealment exception, but the Court found that defendants' failure to inform plaintiffs that they had changed the method of calculating retirement benefits was not an "affirmative step" that would toll the statute of limitations.  Id. Therefore, the Court reasoned, plaintiffs were not prevented from discovering the alleged breach of duty any earlier, and the fraud or concealment exception did not apply.  Id.

Piatelli and Gardner contend that defendants failed to inform any contingent workers of their possible eligibility to participate in defendants' benefit plans, and that this constituted fraud or concealment.  But plaintiffs have not offered evidence to establish that defendants took affirmative steps to prevent them from discovering their legal entitlement to benefits.  There is no evidence that defendants ever dissuaded plaintiffs from consulting counsel, or that defendants ever denied plaintiffs access to benefit plans upon request.  Cf. Unisys III, 242 F.3d at 505.  The record permits no conclusion other than that defendants' breach, i.e., their decision to classify all contingent workers as non-employees and deprive them of benefits, was "lay bare for the world to see."  Kurz, 96 F.3d at 1552.[12]  Therefore, the fraud or concealment exception does not apply.

---

[12]Plaintiffs also contend that defendants committed fraud or concealment by failing to provide them with plan documents.  Piatelli Opp., 20.  Mere inaction, however, does not satisfy

c.      Continuing Violation

Plaintiffs also contend that defendants' failure to assess their status as common law employees constitutes a "continuing violation."  To protect the purposes of the statute of limitations, the Third Circuit has rejected the "continuing violation theory" in ERISA cases. Miller, 475 F.3d at 522 (continuing violation theory inapplicable to underpayment).  Therefore, it does not apply.

B.      Keen

1.      Denial of Benefits

In Counts 1, 3, and 6, Keen asserts claims for denial of pension, savings and cafeteria plan benefits.  As already discussed relating to Piatelli and Gardner's claim, the statute of limitations for the denial of benefits is four years, and the claim accrues when the fiduciary has clearly repudiated the benefits to the beneficiary.  Miller, 475 F.3d at 520-521.  Because Keen filed suit on August 23, 2005, his claims are timely only if they accrued on or after August 23, 2001.

Lockheed communicated to Keen a clear repudiation of benefits back in 1993, when Keen elected to retire from Martin Marietta, collect his GE pension, and become a contingent worker at Martin Marietta.  Like Piatelli and Gardner, Keen asserts that he was a common law employee from the start of his tenure as a contingent worker.  Keen should have brought his suit for a declaratory judgment as soon as he knew or should have known that he was being denied

Ranke's requirement of "affirmative steps" of fraud or concealment.  436 F.3d at 204-205.

21

benefits, and that he was or would be a common law employee.[13]  His claim was ripe then.  There

was an adversity of interests, the factual record was adequate to adjudicate his rights, and a

declaratory judgment would have been of practical help to the parties in planning for future

expenditures and benefits.  Travelers Ins. v. Obusek, 72 F.3d 1148, 1154-1155 (3d Cir. 1995).

Therefore, Keen's claim accrued in 1993, and Counts 1, 3 and 6 are time-barred.[14]

In Count 5, Keen brings a claim for denial of vacation benefits.  Under governing

Supreme Court authority, ERISA does not encompass vacation payments which are "payable on

a regular basis from the general assets of the employer and are accumulated over time only at the

election of the employee."  Massachusetts v. Morash, 490 U.S. 107, 116 (1989).  In his

complaint, Keen concedes that Lockheed had no formal vacation pay plan; but he contends that

Lockheed promised him paid vacation time based on his years of service as credited under the

pension plan.  Keen asserts that Lockheed provided two or three weeks of paid vacation every

year, suggesting that the plan provided for regular payments.  ERISA does not cover this type of

vacation plan.  Morash, 490 U.S. at 116.  Therefore, Keen's claim arises under state contract law,

and the statutory period is four years.  42 Pa. Cons. Stat. § 5525(a)(8).  Keen's claim is timely

only if it accrued on or after August 23, 2001.  A breach of contract claim accrues when the

---

[13]Additionally, Keen was a regular employee entitled to plan documents during the window period and knew or should have known that the plans covered common law employees. Keen should have known of both his actual and legal injury when his benefits were repudiated.

[14]In Count 1, Keen seeks recovery of pension benefits due from his 8-week period as a regular employee during the "window period."   Keen never participated in Martin Marietta's pension program during the window period, despite participating in Martin Marietta's savings and cafeteria plans, and despite receiving vacation benefits. Am. Compl., ¶ 7.  Keen should have been aware that he was not receiving pension benefits at that time, and those benefits were clearly repudiated in 1993.

breach occurs.  S.T. Hudson Eng'rs. v. Camden Hotel, 747 A.2d 931, 934 (Pa. Super. 2000).

Keen was told in 1993 that he would not be eligible for benefits from Martin Marietta as a

contingent worker, and Keen did not receive any vacation pay from Martin Marietta or Lockheed

as a contingent worker. The alleged breach occurred upon non-payment of benefits, Keen knew

or should have known of it then, and his claim accrued at the latest by 1994.[15]  Keen's claim for

vacation benefits is time-barred.

> 2.      Discrimination

In Counts 2 and 4, Keen asserts claims for discrimination in violation of ERISA § 510, 29

U.S.C. § 1140, which provides:

> It shall be unlawful for any person to . . . discriminate against a participant or
> beneficiary for exercising any right to which he is entitled under the provisions of
> an employee benefit plan . . . or for the purpose of interfering with the attainment
> of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.

Keen contends that Lockheed classified him as a contingent worker for the purpose of

interfering with his right to participate in Lockheed's benefit plans.  The statute of limitations for

an ERISA discrimination claim is at most six years.  Anderson v. Consol. Rail Corp., 297 F.3d

242, 251 (3d Cir. 2002) (statute of limitations for § 510 claim was two years when allegations

were most analogous to wrongful discharge and would be six years when most analogous to

employment discrimination).  Because Keen filed his complaint on August 23, 2005, his claims

under this provision are timely only if they accrued on or after August 23, 1999.

---

[15]Assuming Keen was entitled to vacation benefits as a contingent worker in 1993, and
that vacation pay was payable annually, the first payment should have issued by the end of the
first year that Keen was eligible.

A claim under § 510 accrues when the allegedly discriminatory decision was "made and communicated" to the worker.  Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1140-41 (7th Cir. 1992).  The alleged discriminatory decision in this case, "hiring" Keen a contingent worker, was communicated to Keen in 1993.[16]  Keen chose to become a contingent worker, to begin receiving his GE pension, and to forgo Martin Marietta benefits then.  Therefore, the statute of limitations expired long ago, and Keen's claims are time-barred.[17]

**Conclusion**

Although plaintiffs had no knowledge that they were arguably entitled to benefits under defendants' plans, plaintiffs knew that they were injured many years prior to filing these lawsuits. Plaintiffs knew that defendants had denied them benefits on account of their status as contingent workers.  Under Third Circuit law, plaintiffs had a responsibility to exercise due diligence to determine within the applicable statutory periods that their injury constituted a legal wrong. Because they failed to do so, their claims are time-barred.

---

[16]Of course, H.L. Yoh Company, and not Martin Marietta, "hired" Keen at this time.

[17]Keen contends that the discriminatory decision is not his classification as a contingent worker, which he chose, but defendants' act of hiring Keen as a "common law employee," paying him through a third party employment agency to obscure his common law employee status, and by creating a "vague" definition of "employee" to thwart plaintiff from recognizing his eligibility.  Keen Opp., at 22.  The statute of limitations has run on all of these allegedly discriminatory decisions.  First, assuming Keen's allegations to be true, defendants "hired" Keen as a "common law employee"  through a third party employment agency in 1993, and he alleges in his complaint that he was a common law employee from the start of his tenure as a contingent worker.  Second, Keen was aware in 1993 that he was being paid through a third party employment agency.  Finally, even if defendants' "vague" definition of "employee" constituted discrimination under ERISA, the statute of limitations has expired because Keen should have known of that definition by 1997 at the latest, when Keen became a regular employee of Lockheed and had access to plan documents that contained the allegedly "vague" definitions.

24

## <u>ORDER</u>

**AND NOW**, on this _30TH___ day of April, 2007, defendants' motions for summary judgment (05-CV-4478, Doc. # 36; 05-CV-6211, Doc. #s 46 & 49) are **GRANTED**.  Plaintiff Gardner's motion for class certification (05-CV-6211, Doc. # 37)  is **DENIED** as moot.

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

O:\ABB 2007\Piatelli and Keen orderon summary judgment and class certification.wpd